CITY OF JACKSON, MISSISSIPPI v. CRESTON HILLS, INC.

No. 43353 February 22, 1965 172 So. 2d 215

566

*E. W. Stennett, W. T. Neely,* Jackson, for appellant.

*Young & Young,* Jackson, for appellee.

GILLESPIE, J.

This case involves a suit by Creston Hills, Inc., a certificated public utility operating a water company supplying water to more than 200 residences outside of the City of Jackson when the city limits were extended to include the area served by the water utility. The City invaded the area certificated to the private water utility, causing it to go out of business. This suit was to recover from the City for damaging the property of the private utility without paying compensation therefor as required by section 17 of the Mississippi Constitution of 1890. We affirm on liability and reverse for assessment of damages.

For a number of years prior to September 13, 1956, one J. A. Barnhill operated a water company in an

area several miles south of the City of Jackson, Mississippi, hereinafter referred to as Creston area. Barnhill had no certificate of public convenience and necessity on September 13, 1956, when he conveyed to Creston Hills, Inc., a Mississippi Corporation, hereinafter designated Creston, certain real property and the water mains and appurtenances owned by him in connection with the operation of the water company. Approximately 225 customers were being served by the water company at that time. The system consisted of two deep wells, two submersible pumps, two pressure tanks, water mains, service lines and other sundry property.

Pursuant to a petition filed by Creston Hills, the Public Service Commission, on March 4, 1958, issued to Creston a certificate of public convenience and necessity under the provisions of the "grandfather clause" of the Public Utility Act of 1956. Mississippi Code Annotated § 7716-01(b) et seq. (1956). In March 1960, while Creston was operating the water utility pursuant to its certificate, City extended its corporate limits so as to include the entire area served by Creston. On July 14 City expressed its intention to lay water mains in the area served by Creston by declaring in a resolution the necessity of installing water mains, fire plugs, connections and appurtenances in said area. In December 1960, City began laying a complete water system in Creston's certificated area, paralleling Creston's lines. Representatives of City contacted every customer then being served by Creston and told each of them that while the new water system was being laid by the City's contractor the customer could have a water line laid to the premises ready for attachment of the meter at a cost far less than would be possible at a later time. The representative of the City also told each of Creston's customers that city water was available if the customer desired it, and 156 of Creston's customers had City's service lines or "stub-outs" run from the main to

their property line. About 15 of Creston's customers discontinued purchasing water from Creston at that time, or between that time and June 1963, and began purchasing water from the City, whose rates appeared to be lower than those of Creston.

After it became known that City was preparing to extend its water mains and other facilities into Creston's certificated area, on August 26, 1960, Creston filed a petition with the Public Service Commission for a cease and desist order against the City of Jackson. After hearing, the Public Service Commission, on January 30, 1961, ordered City to cease and desist taking applications for water service from residents of Creston's certificated area. City appealed from that order and on September 26, 1961, the Chancery Court of Hinds County reversed the order of the Public Service Commission and dissolved the cease and desist order and dismissed Creston's petition.

The decree of the chancery court made the opinion of the chancellor a part of the decree by reference, and in the opinion of the chancellor it was stated that the Public Service Commission had no jurisdiction of the matter. The opinion went on further to state that the extension of the city limits ipso facto cancelled Creston's certificate of public convenience and necessity. No appeal was taken from the decree of the chancery court reversing the Public Service Commission's cease and desist order.

Creston's revenues from the sale of water declined after the City began competing in the area, and in June 1963, one of Creston's submersible pumps, apparently an expensive piece of machinery, burned out, and Creston, according to its sole stockholder, decided to discontinue business because it was unable to compete with City and any money paid out in repairing the disabled machinery would be lost. Whereupon Creston notified its customers that it was ceasing business, and

on or about June 13 all of Creston's customers were connected to the city water system. Creston then petitioned the Public Service Commission and surrendered its certificate of public convenience and necessity.

City built its own water mains and distribution system and did not take over the system abandoned by Creston. The proof shows that Creston's system was not suitable for the purposes of the City and did not meet its specifications.

## I.

 ██ City contends that the decree of the Chancery Court of Hinds County reversing the cease and desist order of the Public Service Commission bars the present action under the doctrine of res judicata. Within a few weeks after City made known its intention to extend water service to the Creston area, the petition for a cease and desist order was filed by Creston with the Public Service Commission and all that Creston requested was a cease and desist order to protect itself from competition by City in Creston's certificated area. The City resisted and a hearing was had and the petition was granted. City appealed to the chancery court and that court reversed the order of the Commission, dissolved the cease and desist order, and dismissed Creston's petition. Based on statements in the chancellor's opinion, it is contended by City that the litigation beginning before the Commission and ending in the chancery court on appeal thereto was a judicial determination that Creston's certificate of public convenience and necessity had been cancelled and held for naught and that this constituted a bar to the present litigation. The proceedings before the Public Service Commission were for a cease and desist order, and did not involve any damages that Creston might be entitled to for the wrongful damaging of its property. The proceedings before the Public Service Commission sought to avoid

threatened competition which Creston deemed unlawful under the Public Utility Act of 1956. Therefore, the object of the proceedings before the Public Service Commission and the object of the present suit were not the same. The first was to avoid competition and the present suit is to recover for the wrongful damaging of property. We are also of the opinion that the collateral estoppel aspect of res judicata is not available to City. It was not necessary for the chancery court to find that Creston's certificate of public convenience and necessity was either valid or invalid in order for that court to conclude that the Public Service Commission had no jurisdiction to hear the petition for a cease and desist order. The Public Utility Act of 1956 specifically excluded municipalities from the jurisdiction of the Commission. The Commission had no jurisdiction over the City of Jackson, so the chancery court on an appeal from the Public Service Commission had no jurisdiction of the matter. We hold that City was not in a position to claim that Creston had no authority to litigate in the present suit the question of damages for the damaging of its water system.

## II.

City assigns as error the granting of a peremptory instruction directing the jury to find for Creston as a matter of law. The disposition of this assignment makes it necessary for the Court to determine what rights the parties had with reference to the Creston area after expansion of the city limits. It also raises the question whether the proof showed without dispute that City did invade the Creston area by establishing its water system in competition with Creston.

City's contention is that under the statutes it has the privilege and the duty to furnish water to all of the inhabitants of the City and, notwithstanding the fact that Creston had theretofore been granted a certificate

of public convenience and necessity to serve the Creston area before expansion of the city limits, when the city limits were expanded to include the Creston area the certificate of public convenience and necessity held by Creston was automatically cancelled. City contends that after such expansion of the city limits Creston had no further rights and City had the exclusive right to furnish water to the Creston area residents. City also contends that Creston had no property rights in the water lines because they were laid in dedicated streets without any easement.

██ █ The Public Utility Act, Mississippi Code Annotated section 7716-01(H), provides that any public utility as defined in the Act, owned and operated by a municipality shall not be subject to the provisions of the Act. Chapter 19, Laws of Extraordinary Session 1957, Mississippi Code Annotated section 3374-139 (1956), provides that any municipality operating a municipal water service shall have the privilege of serving water to all inhabitants within its corporate boundaries, including such areas as may be incorporated by such municipality in the future.

The aforesaid provisions must be considered with and to some extent limited by the provisions of Mississippi Code Annotated section 7716-05(b), known as the "grandfather clause," which provides as follows:

> The commission shall issue a certificate of convenience and necessity to any person engaged in the construction or operation of such equipment or facility on the effective date of this act, for the construction or operation then being conducted, without requiring proof that public convenience and necessity will be served by such construction or operation, and without further proceedings, if application for such certificate is made to the commission within six (6) months after the effective date of this act; and pending the filing of any such application and the issuance of a

certificate, the continuance of such construction or operation shall be lawful. . ."

Pursuant to said "grandfather clause" of the Public Utility Act of 1956, Creston applied for and obtained a certificate of public convenience and necessity for the area involved in this suit. City intervened in that proceeding and sought to have the certificate limited as to duration to the time the Creston area remained outside the city limits of the City of Jackson. The Public Service Commission rejected this contention on the part of the City and issued the certificate without any such restriction.

 The certificate of public convenience and necessity issued to Creston was a valuable right, entitled to protection by the courts. City had no right to invade the Creston area without first paying compensation as provided by Section 17 of the Mississippi Constitution of 1890, which provides that "Private property shall not be taken or damaged for public use except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law: . . ."

 We said in Delta Electric Power Association v. Mississippi Power & Light Company, 250 Miss. 482, 149 So. 2d 504 (Miss. 1963): "There is no indication that a municipal expansion of boundaries would supersede a prior certificate from the Commission." 149 So. 2d at 510. And in the same case the Court said: "Nor is there any direction that a municipal expansion shall cancel or in any way affect a Commission certificate." 149 So. 2d at 511. See also Capital Electric Power Association v. Mississippi Power & Light Company, 250 Miss. 514, 150 So. 2d 534 (Miss. 1963). These two cases dispose of all the arguments made by City with reference to its claimed right to serve the Creston area in competition with Creston. We hold that the expansion of the city limits to include the Creston area did not give the City of Jackson any rights whatever to furnish

water to the inhabitants of the area certificated to Creston by the Public Service Commission.

■■ ■ City also contends that Creston had no property rights to the water lines laid in the streets in the Creston area under the authority of Stegall v. City of Jackson, 244 Miss. 169, 141 So. 2d 236 (1962). The record shows that Creston's predecessor in title laid the water lines in the dedicated streets in the Creston area without reserving an easement therefor. This apparently occurred about 1948. We are of the opinion that City is in no position to contend that Creston does not have any property rights in the water lines. We are also of the opinion that the certificate of public convenience and necessity held by Creston authorizing it to operate in the Creston area when that area was not within the City of Jackson is sufficient to distinguish the *Stegall* case. In *Stegall* a sewer system was involved and Stegall, the pretended owner thereof, when City extended its limits to include the area, had collected in full the value of the system from the property owners served by said sewer line, and Stegall had no certificate of public convenience and necessity to operate a sewer. We are of the opinion that the *Stegall* case has no application to the case now before this Court.

■■ ■ The question whether the City invaded and took over the area certificated to Creston is admitted, not only in the pleadings but by the testimony of employees of the City. We are of the opinion and so hold that Creston was fully justified in going out of business and ceasing operations because of the invasion of its territory by City. It could not hope to compete with City and it probably minimized the damages by ceasing operation when it did.

We conclude, therefore, that the trial court was correct in granting a peremptory instruction in behalf of Creston and in denying a similar instruction requested by City.

### III.

The only instruction to the jury on the measure of damages was the one given at the request of Creston which told the jury that it was its duty to take into consideration in arriving at the amount of damages (a) the amount of revenue lost by Creston as a result of City moving into its territory; (b) the difference in the value of the water plant before the City entered the territory and its value after it had ceased business, and (c) the value of Creston's certificate of public convenience and necessity. We consider whether it was error to give this instruction, as claimed by City, along with the fact that there was no evidence offered concerning the value of item (c), and very little as to item (b). In this particular case, we think that the loss of revenue, caused by the unlawful invasion of Creston's area by City, is a special item of damage. Creston charged a flat monthly rate and the evidence indicates that Creston's operating expenses were not diminished because the City took some 18 customers that Creston was otherwise entitled to furnish water at the rate of $3.50 per month.

The only evidence offered concerning the physical properties, including the land where the wells and storage tanks are located, the wells themselves, the tanks and the water lines, was that said property originally cost about $66,000 and its depreciated value is about $49,000. This evidence was offered in the form of an auditor's statement and not in the form of an appraisal by one familiar with that type of property. No evidence whatever was offered concerning the fair market value of the certificate of public convenience and necessity, although we are of the opinion that as a matter of law such certificate has a value when considered with the other assets of the untility as a going concern.

■■ ■ We are of the opinion that the instruction as given was error. The instructions in this case should

be similar to those in an eminent domain proceeding and separate items of damages should not be the subject of instructions. Miss. State Highway Commission v. Stout, 242 Miss. 208, 134 So. 2d 467 (1961).

We hold that the measure of damages in this case is the difference between the fair market value of the business as a going concern immediately before the damage and the fair market value of any assets remaining after the business closed and ceased to operate as a public utility. In determining the before value of the utility business so damaged, every element of the plant or system which was reasonably required for the operation thereof and which entered into and remained a part thereof should be taken into account. This means that the appraiser should consider the certificate of public convenience and necessity as an element of value, for without it the entire physical plant would be worthless. Pacific Gas & Electric Co. v. Delvin, 188 Cal. 33, 203 P. 1058 (1922). The value of the utility as a going concern is obtained by taking a comprehensive view of each and all of the elements of property, tangible and intangible, and considering them as inseparable parts of the business entity. Appleton Waterworks Co. v. Railroad Commission, 154 Wisc. 121, 142 N.W. 476 (1913). After City laid its water mains in the Creston area and took part of Creston's customers, Creston continued to operate its system until June 1963, and because of this fact Creston is entitled to recover revenues lost during this period as a result of City's unlawful competition during said period. This is an item of special damage, and the jury was correctly instructed to consider it in addition to the difference between the fair market value of the utility as a going concern before City began competing with it and the fair market value of any property remaining after Creston ceased business; and it is allowable, not as lost profit, but as an ascertainable sum which Creston would

have received without additional operating expense but for City's unlawful invasion of the area served by Creston.

We hold that the case must be reversed because of the granting of Creston's requested instruction on the measure of damages. Item (a) thereof was proper, being the item of special damage for loss of revenue, as already stated. It was not proper to instruct the jury separately concerning the value of the certificate of public convenience and necessity; for separate elements of value merge in the before value of the utility as a going concern. Moreover, the proof was insufficient to justify submission to the jury of any question of damages except as to item (a).

City contends that the trial court erred in refusing City's requested Instruction No. 9. This instruction would have told the jury that Creston had no right to complain about the fact that the City installed water mains within the area of controversy and furnished fire protection to the inhabitants of the area. This instruction would have been confusing. Creston did not ask damages because City put in water mains and fire plugs. It sought damages only in connection with the installation in the Creston area of a water distribution system by the City.

City complains of the refusal of an instruction requested by it that would have told the jury "that if you should find from the evidence in this case that the plaintiff Creston Hills, Inc., failed to furnish an adequate supply of water, and render a service which the customer could reasonably expect of a utility, and that the plaintiff went out of business solely by reason of failure to render service and furnish an adequate supply of water," then the plaintiff was not entitled to recover anything in this case. We have already determined that Creston was entitled to a peremptory instruction which is a sufficient disposition of this contention. The

evidence did not justify the granting of this instruction on any basis. City made an effort to show that some of the customers of Creston were dissatisfied. But the Public Service Commission had never cited Creston for failure to perform adequately its duty under the certificate of public convenience and necessity. We are of the opinion that there is no merit in this contention.

Several other arguments made by City are, in our opinion, without merit.

For the reasons stated, this case is affirmed as to liability and reversed on the question of damages for a new trial for the assessment of damages only.

Affirmed as to liability; reversed and remanded for a new trial on the question of damages only.

*Kyle, P. J., and Jones, Brady and Inzer, JJ.,* concur.