416 So.2d 399 (1982)
BEAR CREEK WATER ASSOCIATION, INC.
v.
TOWN OF MADISON, Mississippi.
No. 53168.
Supreme Court of Mississippi.
June 30, 1982.
*400 Herring & Self, James H. Herring, Canton, for appellant.
Young, Scanlon & Sessums, Stephen W. Rimmer, Jackson, for appellee.
PER CURIAM.
PATTERSON, Chief Justice, for the Court:
The Town of Madison (hereinafter Madison) petitioned to condemn a portion of a certificate of public convenience and necessity held by Bear Creek Water Association, Inc., (hereinafter Bear Creek). From an award of $920.37 by an Eminent Domain Court of Madison County, Bear Creek appeals.
On June 28, 1971, Bear Creek, a non-profit corporation, was issued a certificate of public convenience and necessity by the State Public Service Commission to distribute water to an area of southern Madison County comprising some 39,136 acres of land. On April 13, 1979, the boundaries of Madison were expanded and 245 acres of the certificated area were annexed to the municipality. Thereafter on January 14, 1980, Madison petitioned to condemn that part of Bear Creek's certificate embracing the annexed 245 acres which included a significant part of Summertree Subdivision, a recently developed residential area. However, no physical facilities or other real property of Bear Creek were included in the proceedings. Indeed, in the condemned area, Bear Creek owned only the certificate of public convenience and necessity granting it the right to distribute water.
When the petition was filed on January 14, 1980, there were no water customers residing on the 245 acres and Bear Creek was receiving no revenue from it. However, the developer of the subdivision had installed water distribution facilities in the condemned portion at an approximate cost of $85,000. Moreover, it appears to be common practice for subdivision developers to install water distribution facilities which are later dedicated to the person or concern owning the right to serve the area. At the time the petition was filed, however, the developer had not conveyed the facilities to anyone although Bear Creek appeared to be the only logical recipient because it owned the exclusive right to serve the area, at least until Madison filed the eminent domain proceedings.
The litigants are not in disagreement that the certificate of public convenience and necessity has value for which just compensation must be made under the mandate of Section 17 of the Mississippi Constitution of 1890 and our decisions in Mississippi Power & Light Company v. City of Clarksdale, 288 So.2d 9 (Miss. 1973), and City of Jackson v. Creston Hills, Inc., 252 Miss. 564, 172 So.2d 215 (1965). They thereby necessarily acknowledge that just compensation must be made for the condemned portion of the certificate. They sharply disagree, however, as to the formula for the ascertainment of just compensation for the taking and the consequential damages, if any.
Bear Creek contends the proper measure should have been the difference between the fair market value of the business of the appellant, of which the certificate is a part, as a going concern before and after the *401 taking, plus any damages to the business remaining after the taking. Madison argues that in an eminent domain case the condemnee is entitled to (1) recover the fair market value of the property condemned; and (2) a sum equal to the damages, if any, sustained by the remainder of the property if less than whole is taken, both to be determined by the "before and after rule" and that the "going concern" formula urged by Bear Creek on the basis of City of Jackson v. Creston Hills, Inc., supra, is patently erroneous.
The trial court adopted the formula urged by Madison and sustained a motion in limine which prohibited Bear Creek from introducing any testimony concerning (1) the physical facilities maintained by Bear Creek, its capacity to provide water service to the area, the facilities' value and their proximity to the area in question; (2) any matters pertaining to the part of the Summertree development outside the area covered by the portion of Bear Creek's certificate, which was condemned; (3) any matter pertaining to water facilities in the subject area which were neither installed nor owned by Bear Creek at the time the petition was filed; (4) any matters pertaining to the development activities occurring after the filing of the petition in the area covered by the portion of the certificate condemned and (5) any matters pertaining to alleged future revenues and profits which might be derived through the sale of water to future residents of the area.
In its first assignment of error Bear Creek complains of the formula the trial court used in instructing the jury on the compensation due Bear Creek for the condemnation, which was the difference between the fair market value of the certificate immediately before the taking and the fair market value immediately thereafter. Bear Creek contends, as mentioned, the proper measure should have been the difference between the fair market value of the business of the association as a going business concern immediately before the taking and immediately thereafter. It relies upon Creston as controlling authority.
Although Creston is not directly on point, it sets forth by analogy the proper measure for compensation in this case, in our opinion. Creston involved a suit by a certificated public utility against the City of Jackson for damages caused when the City annexed the area certificated to Creston which was previously outside the city limits. The City laid a water system in Creston's area and began attracting customers without instituting condemnation proceedings. On petition by Creston in 1960 the Public Service Commission ordered the City to cease and desist, but a chancery court on appeal overturned the Commission's order, finding the Commission had no jurisdiction. In 1963, being unable to compete with the City, Creston discontinued its business and surrendered its certificate. At no time did the City take over the physical facilities owned by Creston.
In a suit for damages by Creston, this Court on appeal stated:
The certificate of public convenience and necessity issued to Creston was a valuable right, entitled to protection by the courts. City had no right to invade the Creston area without first paying compensation as provided by Section 17 of the Mississippi Constitution of 1890, which provides that "Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; ...
172 So.2d at 220. The Court went on to state the measure of damages:
We hold that the measure of damages in this case is the difference between the fair market value of the business as a going concern immediately before the damage and the fair market value of any assets remaining after the business closed and ceased to operate as a public utility. In determining the before value of the utility business so damaged, every element of the plan or system which was reasonably required for the operation thereof and which entered into and remained a part thereof should be taken *402 into account. This means that the appraiser should consider the certificate of public convenience and necessity as an element of value, for without it the entire physical plant would be worthless. Pacific Gas & Electric Co. v. Delvin, 188 Cal. 33, 203 P. 1058 (1922). The value of the utility as a going concern is obtained by taking a comprehensive view of each and all of the elements of property, tangible and intangible, and considering them as inseparable parts of the business entity. Appleton Waterworks Co. v. Railroad Commission, 154 Wis. 121, 142 N.W. 476 (1913).
172 So.2d at 221-222.
Bear Creek's certificate granting it the right to distribute water to the annexed area undoubtedly has value for which it is entitled to just compensation, and since the taking was not total, it is also entitled to consequential damages, if any. In our opinion, the exclusive right has value, or the potential of value, to Bear Creek only as a going business concern, because it is an essential element of such business. We therefore think the trial court erred in sustaining Madison's motion in limine herein-above set forth, except section (4) which, in accord with Pearl River Valley Water Supply District v. Wright, 186 So.2d 205 (Miss. 1966), specifies values in eminent domain proceedings as of the date suit is filed, and not thereafter. By sustaining the motion, in our opinion, the testimony was limited to property value urged by Madison, which in turn restricted the jury instructions to such value as distinguished from business value, thereby depriving Bear Creek of a fair evaluation of the condemned portion of the certificate.
Madison's testimony on value was given by an expert witness who took the gross revenue ($147,018) of Bear Creek for the year ending in December 1979, and divided it by the total acreage (39,136) of Bear Creek in order to reach a revenue-per-acre figure. This figure was then multiplied by the acreage (245) condemned from the certificate, thereby reaching a result of $920.37. The witness then concluded this sum was the value of the condemned portion of this certificate. Although we do not reject this method of appraisal as being improper and hasten to state that it might be considered on retrial along with all other relevant testimony, we do think it has obvious limitations to the present factual situation. It makes no differentiation between high and low population density areas within the total certificated area, nor does it reflect acreage of potential growth as contrasted to those in which no development is possible, and where no water service will ever be needed. Moreover, it permits no consideration of the inchoate, but nevertheless essential right to serve, which is the only value of the certificate to Bear Creek as a business concern.
In ascertaining the fair market value of the portion of the certificate condemned, it is essential, in our opinion, to examine Bear Creek's previous income, its physical assets, their proximity to the area which Bear Creek is precluded from serving, the probability of its receiving the water facilities installed by the subdivision developer, the probability of residential growth, and the likelihood of future revenues from the area. In other words, all of the factors that a businessman or concern would reasonably consider in determining Bear Creek's value in an open market. We think this evaluation must be determined as of the date the eminent domain petition was filed, the date of the taking, so that its value immediately thereafter might be determined. The difference between these evaluations is the compensation to which Bear Creek is entitled for the condemned portion of its certificate, exclusive of consequential damages, if any.
In numerous cases, we have stated that the fair market value is the amount of money which could be obtained on the open market at a voluntary sale of property; the amount that a purchaser who is willing, but not required to buy, would pay, and the amount that a seller who is willing, but not required to sell, would accept. Mississippi State Highway Commission v. Wagley, 231 So.2d 507 (Miss. 1970); Paulk v. Housing *403 Authority of City of Tupelo, 204 So.2d 153 (Miss. 1967); Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565 (1940).
In our opinion, the determination of fair market value necessarily requires that both the purchaser and the seller be fully informed of all circumstances involving the value and use of the property so that an approximation of its present worth might be determined. Wheeler v. Mississippi Highway Commission, 212 Miss. 606, 55 So.2d 225 (1951), and Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565 (1940). We think it impractical to assume that a businessman interested in buying a going business would blind himself to past revenues, present physical facilities, the likelihood of expansion and other business factors, including the likelihood of future revenues, because all are essential to its present market value.[1] We therefore think that Bear Creek was prejudiced by the exclusion of its evidence concerning the value of its business as a going concern. Thus, we reverse and remand for a new trial.
Having reached the above conclusion, we do not extend the opinion to the other assignments of error.
REVERSED AND REMANDED.
All Justices concur.
NOTES
[1] Of interest, see Just Compensation Via Fair Market Value, 46 Miss.L.J. 1 (1975).