The Honorable Veo Easley State Representative P.O. Box 308 Sheridan, AR 72150
Dear Representative Easley:
This is in response to your request for an opinion on several questions concerning municipal water and fire protection service in the City of Sheridan. You state that the city owns and operates its own water system and is interested in assuming responsibility for providing water and fire protection service to the residents of certain annexed areas who are currently being served by two non-profit rural water associations. Your specific questions are restated and addressed below in the order posed:
 1. If the city assumes responsibility for water service to residents of the city who are currently being served by one of these associations, will it be necessary for the city to pay any compensation to the association which previously furnished water to these customers through lines paid for by the owner or developer?
The answer to this question will depend upon all of the particular facts and circumstances surrounding the city's provision of water service. This office cannot act as a factfinder in resolving this question. I suggest, therefore, that the city consult its local counsel in this regard. I will, however, review the general legal principles that may be implicated in this instance.
Initial consideration must be given to the possible existence of a loan made by the federal Farmers Home Administration ("FMHA") to the water associations. Provision is made under federal law for such loans. See 7 U.S.C.A. § 1926(a) (1992). Particularly significant for purposes of your inquiry is subsection (b) of § 1926, which states in relevant part that "[t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation . . . during the term of such loan. . . ." It is thus clear that the city may not encroach upon services provided by a water association that is currently indebted to the FmHA. Seegenerally City of Madison, Miss. v. Bear Creek Water Ass'n,Inc., 816 F.2d 1057 (5th Cir. 1987).
Assuming that there is no such outstanding indebtedness, the inquiry will most likely focus on whether there has been a taking of private property for public use such that compensation is owing. Ark. Const. art. 2, § 22.[1] The city has specific statutory authority under Arkansas law to exercise its right of eminent domain for the purpose of acquiring any land or property for the operation of a municipal waterworks system. A.C.A. §14-234-215 (1987). The amount of compensation that may be due to the owners of the property in that instance would be ascertained in accordance with the relevant statutory provisions. See
A.C.A. §§ 14-234-215(a) (1987) and 18-15-306 (1987).
The question of whether a "taking" has occurred requires a case-by-case determination, based upon the specific facts. "Taking" under the power of eminent domain has been defined generally as "entering upon private property for more than a momentary period and, under the warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as to oust the owner and deprive him of all benefitial enjoyment thereof." 26 Am. Jur. 2d Eminent Domain § 157 (1966). As a general rule, there is a taking when the act involves an actual interference with, or disturbance of, property rights, resulting in injuries which are not merely consequential or incident. Id.
It has been stated that a taking of property for which compensation must be paid does not require an actual physical taking, but may consist of an interference with the rights of ownership, use, and enjoyment, or any other rights incident to property. Id. However, acts done in the proper exercise of governmental powers which do not directly encroach upon private property, though they may impair its use, do not amount to a taking of such property within the meaning of the ordinary constitutional provision that private property shall not be taken for public use without just compensation. Id. On the other hand, a governmental regulation of private property may constitute a taking. Id.
It is readily apparent, in applying these general principles, that your first question requires identification of the water associations' specific property rights, if any, that may be impacted by the city's actions. I assume, based upon the limited facts set forth in your correspondence, that the city does not propose to take physical possession of any of the associations' property. I am, however, somewhat uncertain whether the city's actions will, nevertheless, substantially deprive the associations of the beneficial use of any of their property so as to constitute a constitutionally recognized "taking."
If the city proposes to construct its own system and, in essence, compete with the water associations, it may be concluded, as a general matter, that no compensation will be owing. The mere fact that there is an existing water system in the annexed territory would not appear to prevent the city from constructing its own system although the other system is still in operation. The rule is apparently otherwise in some states. See 94 C.J.S. Waters
§ 235 (1956). Although loss of business is one of the elements of damage for which there should be compensation in a constitutional taking of property, this presumes that the loss is attendant to the taking of some property right. No such right was found in the case of Alford v. City of Denton, 546 S.W.2d 672 (Tx.App. 1977), where the city had never issued a franchise to the owners of the private water utility and did not physically interfere with the company's property or prevent it from selling or supplying water to its customers. The court stated:
 [G]overnmental action which causes or results in an individual's loss of business, standing alone, does not constitute a `taking' of property which gives rise to any right to receive compensation from the sovereign. A person operating a business in, under or over the streets, alleys and other public places within an incorporated municipality without a franchise has no property right in the continued use of such premises for conducting his business.
546 S.W.2d at 673. See also generally Stillings v. City ofWinston-Salem, 311 N.C. 689, 319 S.E.2d 233 (1984) (holding that a solid waste collection and disposal franchisee, operating under a county rather than a city franchise, was not entitled to compensation where the city did not unlawfully extend governmental service to the annexed territory and did not confiscate or directly interfere with any property of the franchisee.)
A contrary result was, however, reached in City of Jacksonvillev. Creston Hills, Inc., 252 Miss. 564, 172 So.2d 215 (1965) where the city extended its corporate limits and built a complete water system for an area served by a water company operating under a certificate of public convenience and necessity issued by the Public Service Commission. The court determined that the certificate was a valuable right, entitled to protection, and that the city had no right to expand into the area without compensating the water company. 172 So.2d at 220.
You have not indicated that the water associations in this instance operate under any franchise, certificate, or similar grant of authority to serve the annexed areas. It should be noted, however, that this may not end the inquiry if the city by its actions directly interferes with the Association's use of its property, notwithstanding the absence of a physical intrusion on or damages to the property. See generally 26 Am. Jur. 2dEminent Domain § 161 and Conroy-Prugh Glass Co. v.Commonwealth, Dept. of Transp., 7 Pa. Cmwlth. 66, 298 A.2d 672
(1972), rev'd. on other grounds, 456 Pa. 384, 321 A.2d 598
(1974). Such interference may constitute a de facto taking or a compensable injury if the injury complained of is the direct consequence of the city's action or course of conduct. Id. This presumes, however, that there is some direct interference by the city, and I lack sufficient information to make that determination.
While I am unable to provide a conclusive answer to your first question due to its factual nature, the foregoing will hopefully offer general guidance in addressing the matter.
 2. If the city assumes responsibility for furnishing water for fire protection to such residents, by installing its own water distribution lines and its own fire plugs, will it be necessary for the city to pay any compensation to the association which previously furnished water and fire plugs to the area?
See discussion above.
 3. Will it be necessary for the city to exercise its power of condemnation in order to take over water service, including water for fire protection service, to such residents of the city?
See discussion above in response to Question 1. The city is not required to acquire the existing system(s). Any condemnation claim would require reference to all of the particular facts and circumstances. This type of factual determination is not properly within the scope of an Attorney General opinion. I suggest that the city consult its local counsel in this regard.
 4. If it is necessary for the city to compensate the associations which now furnish water service to these areas, what is the appropriate measure of damages to determine the amount of such compensation?
This will present a question of fact which cannot be answered in an Attorney General opinion. The proper measure of damages will depend upon the particular actions of the city giving rise to a compensable injury.
 5. Both of the associations in question currently purchase their water from the City of Sheridan, pursuant to a written contract, a copy of which is attached. If the city takes over water service to customers located within the city, is there any way this could be construed as a breach of this contract or otherwise release the associations from their obligation to purchase water from the city pursuant to the terms of this contract?
Because it appears that this question involves construing the contract between the city and the water associations, I cannot provide an opinion on the matter. This will, it seems, require a review of the particular facts and circumstances surrounding the agreement. This matter should be addressed by counsel to whom the city ordinarily looks for advice.
 6. The annexed areas include some partially developed residential areas and undeveloped areas which are zoned for future development as residential or commercial areas, to which water service is currently neither provided nor necessary. Does the city have the legal right to assume responsibility for future water service to these areas, and to instruct the associations not to run any new water distribution lines, nor hook up any additional customers located within the city limits of the City of Sheridan?
It is my opinion that the answer to this question is, as a general matter, "no." Although a city clearly may purchase or construct a waterworks system (see A.C.A. §§ 14-54-702 (1987),14-234-203 (1987) and 14-234-204 (1987)), my research has not yielded authority for the proposition that a city can dictate an exclusive service territory for its municipal system. Such exclusivity would, it seems, result to some degree from a prohibition against any new distribution lines or customers of the water associations. While the city's rationale for such a prohibition is probably relevant to the analysis, it is my opinion that the city's action in this regard would generally be subject to challenge. It is well-established that cities have no inherent authority to enact legislation. City of Fordyce v.Vaughn, 300 Ark. 554, 781 S.W.2d 6 (1989). Such authority is dependent upon the authority granted by the Constitution and the General Assembly. Id. I cannot conclude that a city's general powers encompass this type of action. The power to prevent any extension of private water systems would, in my opinion, in all likelihood require some specific grant of authority from the state.
 7. The planning jurisdiction of the City of Sheridan extends five miles from the city limits. In order to insure compatibility with our zoning regulations and future growth plans, may the city legally require the two associations to submit for pre-approval by our Sewer and Water Committee all plans for new water lines, fire plugs and new water hook-ups within this area?
It is my opinion that the answer to this question is "yes," if the purpose of the "pre-approval" is to insure compliance with a plan for the area developed by the city's planning commission.See A.C.A. § 14-56-412 (1987).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Article 2, § 22 states that "[t]he right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."