**Lon E. BROWN et ux., Appellants,**

v.

**The TOWN OF CORINTH, Texas, Appellee.**

**No. 17550.**

Court of Civil Appeals of Texas,
Fort Worth.

Nov. 1, 1974.

Kelsey & Wood, and Richard H. Kelsey, Denton, for appellants.

Shirley W. Peters, Denton, for appellee.

## OPINION

MASSEY, Chief Justice.

Lon E. Brown and wife brought suit as plaintiffs, as for damages because of inverse condemnation of their property; and alternatively, as petitioners for injunction, against the Town of Corinth, a municipal corporation.

Upon hearing in the trial court, Corinth rested at the same time that plaintiffs rested their case in chief and moved that the court instruct a verdict in its behalf. The court, by-passing the jury, proceeded to render judgment for Corinth. The premise of the court's opinion was that plaintiffs had failed to establish by evidence any invasion or taking of their property and had likewise failed to establish as inherently dangerous construction work undertaken for the municipality by an independent contractor in the placement of the city's water and sewer lines (pursuant to which the plaintiffs' water pipes and meters had been damaged by breakage). From such judgment plaintiffs have brought an appeal.

Judgment is affirmed.

■ We will first dispose of the alternative relief for damage done and threatened by the contractor in connection with performing work for Corinth. Plaintiffs' evidence did not suffice to raise an issue of fact as to whether the work contracted to be performed was inherently dangerous.

Plaintiffs recognize the principle of law relieving a municipality from liability where the work contracted to be performed is not inherently dangerous. Corinth stood acquitted of liability to plaintiffs upon the alternative theory. Plaintiffs' remedy would be against the contractor.

■ Remaining is the controlling question of whether under the circumstances plaintiffs were entitled to sustain an action against Corinth on the theory of inverse condemnation.

Before incorporation of the Town of Corinth plaintiffs' predecessor had operated a waterworks company in the area, at a time when it was the only supplier of water to homes by way of bringing it out of the ground and conveying it by pipes to the homes. There was a sizeable subdivision dedicated to the public, then the county, and platted and placed on file with approval of the Commissioners Court in February of 1959. Relative thereto, by reservation in the dedication and by contract of the owner of the subdivided area with plaintiffs' predecessor, were easements reserved which enured to plaintiffs for the purposes of laying the water pipes for the furnishing of water to prospective residents in and across the streets dedicated to the public.

Before the incorporation of Corinth as a town the predecessor of plaintiffs was also, apparently by sufferance, running water lines on the public streets and roads in the area to a number of customers it was supplying with water. Nowhere in the subdivision described were there any sewer lines. The residents were resorting to the use of septic tanks in the disposition of sewage.

There was never a contract between the municipality and plaintiffs, or with plaintiffs' predecessor. Corinth came into existence as representative of the public to which there had been prior dedication of the streets of the subdivision. The supplying of water to residents continued as before and plaintiffs, upon acquiring the business and physical properties of their predecessor continued to expand and increase their investment.

Subsequently, September 7, 1972 the Town Commission of the Town of Corinth, by ordinance, authorized the issuance of $680,000.00 Waterworks and Sewer System Revenue Bonds. Further action was pursued. The municipality contracted with a company to enter upon its streets and lay water lines and sewer lines, including the

streets within the subdivision. It offered water and sewer services to those who were customers of the plaintiffs. Many such customers availed themselves of the new service, which included both the supplying of water and the sewer lines. Plaintiffs' business suffered; customers residing in the subdivision serve as an example: of the 44 houses located therein plaintiffs' prior service to 29 of them had been discontinued due to these activities on the part of the Town of Corinth.

Corinth, by another ordinance, provided that its sewer service should not be available to any customer unless such customer either used its water or paid the minimum rate attendant to subscribing as a water customer.

In the ordinance authorizing the issuance of bonds was a paragraph reading, as follows: "Section 24. SPECIAL COVENANTS. The Town further covenants as follows: . . . (d) That to the extent it legally may, the Town further covenants and agrees that while any of the Bonds or Additional Bonds are outstanding, no franchise shall be granted for the installation or operation of any competing Waterworks System or Sewer System; and that the Town will prohibit the operation of any such competing system; and the operation of any such competing system is hereby prohibited."

On the foregoing provisions it is conceded that though the ordinance was enacted no action has ever been taken to implement it. The evidence shows that the Town of Corinth did no more than to "go into business" in competition with plaintiffs; and that in such competitive enterprise it was proving very successful, with the result that plaintiffs' return from their own business was most materially decreased and that since such was the case the value of their physical properties, necessary to continue operations, are rapidly reaching the point where they have no value for purposes other than salvage.

The municipality also passed an ordinance prohibiting use of septic tanks, where there was a sewer line within 200 feet of the residence affected. As applied to those using such for waste disposal there was no evidence that it had taken action to implement it or had threatened such. It is obvious, however, that few who become new residents would risk installation of a septic tank rather than to use the municipality's water and sewer facilities if they were available.

As we view the situation it is somewhat analogous to one where one man has an employee who quits and goes into the same business in competition with him and successfully secures the majority of the business formerly that of his employer. The employer has no remedy at law except by some pre-existent contract which would operate to protect him. Plaintiffs have nothing which would operate to protect them. They never have had a franchise upon which they might have felt secure. However, they simply continued to invest in their business despite a complete want of protection. That they had contractual easement rights in certain streets constituted no protection from competition. Their rights were not exclusive.

Upon their argument that the Town of Corinth might have the power to affect by legislation a pre-existing business, but that if so it could not carry into effect implementary action without having given such business ample opportunity to amortize its investment, they cite City of University Park v. Benners, 485 S.W.2d 773 (Tex. Sup.,1972) (cert. denied, 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191). The case was one where a city zoning ordinance passed in 1940 provided that after 1965 the existing non-conforming use made of premises within a zoned area should be brought into conformity with the ordinance. The Supreme Court upheld the ordinance and held that with the time given in the particular circumstances there was conformity with the policy power lodged in the municipali-

ty. We fail to see where plaintiffs benefit by the holding.

In the absence of any contention or evidence that the Town of Corinth, by the act of organizing itself into a municipality, was seeking to dispossess plaintiffs of a right previously possessed, and there is no such contention or evidence here, the disposition of the case is ruled by legal principles considered in State v. Gulf States Utilities Co., 144 Tex. 184, 189 S.W.2d 693 (1945). Substituting water and water lines for the electric power and lines which was the subject of dispute in that case ours is substantially identical. This is so despite the facts that in Gulf States there was action to remove the physical properties of the utility company from the streets of a municipality organized after such properties had been placed in and upon them pursuant to a right purportedly granted by the Commissioners Court of the county in which was located the municipality subsequently incorporated.

The holding of the court in Gulf States Utilities, 189 S.W.2d 698 read as follows: "Since the commissioners' court of Jasper County was without power to grant the rights claimed by respondent the purported franchise and extensions thereof are of no force and effect as against the city's procedure under its ordinance. (Citing cases). The claimed franchise rights cannot therefore form the basis of an estoppel on the city's part to enact and enforce the ordinance in question."

It would appear elemental that if the plaintiffs' claimed right would not be enforceable if the use of their properties within the corporate limits had been prohibited by the municipality, they would likewise be unavailing against the act of the municipality constituting competition.

 The municipality may exercise, for the community of citizens it represents, the same rights which it might have granted to another to exercise under franchise; hence the case would be no different had there been a new party to whom it had granted a franchise to use its streets to operate a competing water works company. Plaintiffs would lack the requisite justiciable interest to maintain their suit in either event.

Although loss of business is one of the elements of damage for which there should be compensation in a constitutional taking of property, it may not be the sole element and it must be attendant to the taking of some property right. In other words governmental action which causes or results in an individual's loss of business, standing alone, does not constitute a constitutional "taking" of property which gives rise to any right to receive compensation from the sovereign. A person operating a business in, under or over the streets, alleys and other public places within an incorporated municipality without a franchise has no property right in the continued use of such premises for conducting his business.

Judgment is affirmed.