William T. ALFORD et ux., Appellants,

v.

CITY of DENTON, Texas, Appellee.

No. 17789.

Court of Civil Appeals of Texas,
Fort Worth.

Jan. 21, 1977.

McGuire, Levy, Collins & McCurley, John E. Collins, Irving, for appellants.

Paul C. Isham, City Atty., City of Denton, Denton, for appellee.

OPINION

SPURLOCK, Justice.

This is a summary judgment case. William T. Alford and wife, the owners of Ranch Estate Water Co., a water utility system, brought suit against the City of Denton, Texas, to recover damages caused by the City installing a competing water system. The City obtained a summary judgment. The Alfords appealed.

We affirm.

During oral submission the parties agreed that there is no genuine issue as to any material fact. It follows then that the question before the Court is whether the moving party is entitled to judgment as a matter of law. All of the material facts are before the Court by stipulation.

In general, the plaintiffs alleged that they acquired on November 10, 1964, a water system and were providing water services for the residents of Ranch Estate Addition, an addition outside the city limits of Denton. They continued this service until Denton annexed this addition. About two years later Denton installed a water system and began providing water service to the Ranch Estate Addition. Plaintiffs called upon the City to either compensate them for their water supply system or *to cease competing with them* in the supplying of water to this addition. They further alleged that their system had a life expectancy of 20 years and they could have reasonably anticipated a net profit of $138,-000.00 for the next 20 years except for the competition the City is now giving them in the supplying of water to this addition. Plaintiffs contend that the City's action constitutes a taking of their property without compensation in violation of the Texas Constitution. (Emphasis added).

In summary form, the facts established by stipulation are: that the plaintiffs became owners of this water system on November 10, 1964, at which time they had four customers; Denton is a home-rule

City; on July 28, 1970, plaintiffs supplied services to 42 customers in that subdivision; the City of Denton had never issued to them a public utility franchise; on April 7, 1972, 32 residents of this subdivision, who were serviced by plaintiffs, petitioned Denton for the extension of water services by Denton into this subdivision; Denton granted this request and began providing water to these residents in March 1973; the City's water lines were installed separate and apart from those installed by the plaintiffs; Denton never physically interfered with plaintiffs' property nor prevented them from selling or supplying water to their customers; Denton never made any payments or consciously assumed any obligation to plaintiffs; and at the time this suit was filed, plaintiffs were providing services to approximately 12 customers and the City to 35 customers.

The real basis of plaintiffs' cause of action is that before the addition was annexed by the City they had constructed water lines and mains in what are now the City's streets and were supplying customers and, therefore, had a monopoly to render such services to this addition. When the City installed its lines and started servicing customers, it took plaintiffs' property without compensation in violation of Tex.Const. art. I, § 17. Its damages were its alleged loss of profits for the next 20 years, had it operated free of any competition.

Tex.Const. art. I, § 17 provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; . . . ."

Tex.Const. art. I, § 26 provides: "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State."

Denton is a home-rule City and, therefore, it has all the powers of home-rule cities granted to it be the Legislature. Tex. Rev.Civ.Stat.Ann. art. 1175 (1963), provides: "Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty:"

"2. The power to fix the boundary limits of said city, to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city . . . ."

"11. To have the exclusive right to own, erect, maintain and operate water works and water works system for the use of any city, and its inhabitants, . . . suitable grounds within and without the limits of the city on which to erect any such works and the necessary right of way, and to do and perform whatsoever may be necessary to operate and maintain the said water works or water works system . . . . .

"12. To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, gas company, or any other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance and upon paying such compensation as may be prescribed and upon such condition as may be provided by any such ordinance. . . .

"13. To buy, own, construct within or without the city limits and to maintain and operate . . . any other public service or public utility, . . . ."

"18. To control, regulate and remove all obstructions or other encroachments or encumbrances on any public street, alley or ground, . . . ."

In *Brown v. Town of Corinth*, 515 S.W.2d 722 (Tex.Civ.App.—Fort Worth 1974, no writ), this Court had before it a case very similar to the one now before us. In that case a husband and wife who owned a water works brought suit against the Town for inverse condemnation of their water system and an injunction. They likewise had been operating a water system in the streets of a subdivision before the subdivision became a part of the Town of Corinth

by incorporation. The Town of Corinth did no more than to "go into business" in competition with the plaintiffs which resulted in a material decrease in plaintiffs' business and, therefore, decreased the value of their property. In that case the plaintiffs likewise complained that the Town was seeking to dispossess plaintiffs of a right previously possessed without just compensation.

This Court, speaking through its Chief Justice, stated: "Although loss of business is one of the elements of damage for which there should be compensation in a constitutional taking of property, it may not be the sole element and it must be attendant to the taking of some property right. In other words governmental action which causes or results in an individual's loss of business, standing alone, does not constitute a constitutional 'taking' of property which gives rise to any right to receive compensation from the sovereign. A person operating a business in, under or over the streets, alleys and other public places within an incorporated municipality without a franchise has no property right in the continued use of such premises for conducting his business."

In the case of *City of Vernon v. Montgomery*, 265 S.W. 188 (Tex.Civ.App.— Amarillo 1924, writ ref'd), the Court held: " . . . Under the state Constitution, art. 1, § 26, it has been held that a city cannot grant a private corporation an exclusive franchise to furnish water, light, and power or gas to the inhabitants of such city for a given number of years. *Hartford Fire Insurance Co. v. City of Houston*, 102 Tex. 317, 116 S.W. 36; *City of Brenham v. Brenham Water Co.*, 67 Tex. 542, 4 S.W. 143. Even though a franchise has been granted, the city can nevertheless grant a similar franchise for the operation of a similar public utility to another corporation or can construct its own plant and operate it in competition with the company to which such a franchise has been granted. *City of Austin v. Nalle*, 85 Tex. 520, 22 S.W. 668, 960. . . .

"We think it is clear from the record that the city council is fully authorized, not only by the general laws referred to above, but by this article of the city charter, to issue the bonds for the purpose of constructing a plant of its own, although it may result in competition with a plant which is already performing such services for the inhabitants of said city. . . . ."

Plaintiffs rely upon cases which are not in point. In the cases relied upon by the plaintiffs the City physically took the water system without compensation; or used water and sewer lines belonging to others without compensation; or widened a highway and during the course of its construction interfered with the business of the adjoining property owner; or built a viaduct leaving the property owner without access to the public thoroughfare except by a small cul-de-sac which impaired the access to his property; and similar cases.

It is our holding, as a matter of law under the facts in this case, that the plaintiffs had no property right in the continued use of the City's streets for the conducting of their business and, therefore, sustained no damage as a matter of law when the City went into competition with the plaintiffs. The plaintiffs, as a matter of law, did not have a monopoly to use the streets of the City to furnish water to the residents of the subdivision within the City. Each point of error has been considered and each is overruled.

Judgment is affirmed.