NUMBER 13-06-00697-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


HOWARD ADAMS D/B/A SOUTH

TEXAS WASTEWATER, Appellant,


v.
 


CITY OF WESLACO AND LIQUID ENVIRONMENTAL 

SOLUTIONS OF TEXAS, L.P., Appellees.

 


On appeal from the County Court at Law No. 1 


of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Wittig (1) 


Memorandum Opinion by Justice Wittig



 Howard Adams d/b/a South Texas Wastewater (STW), appellant, complains that
the trial court erroneously granted summary judgment to appellees, The City of Weslaco
(Weslaco) and Liquid Environmental Solutions of Texas, L.P. (LES) (appellee/intervenor). 
All parties filed for summary judgment. The trial court denied STW's partial motion for
summary judgment, and granted appellees' motions. STW essentially presented three
claims to the trial court: (1) Weslaco's ordinance unlawfully granted an exclusive franchise
to collect grease and grit; (2) STW had a property right in his existing accounts with
business customers and was damaged by Weslaco's actions; and (3) STW claimed
entitlement to injunctive relief. We will address each of these claims in order. We reverse
and render in part, and reverse and remand the remainder of the case.

 1. Background

 STW was a contractor for multiple businesses in the City of Weslaco. It was
registered by the Texas Commission of Environmental Quality as a sludge transporter,
including greasetrap cleaning and disposal. STW had contracts with at least five
restaurant businesses in Weslaco to provide greasetrap cleaning and grease removal
services. January 4, 2005, Weslaco passed ordinance No. 2004-60, which provided for
an exclusive franchise for the collection and disposal of greasetrap waste within the city. 
In July, Weslaco awarded an exclusive franchise under the new ordinance to Liquid
Environmental Solutions of Texas, L. P. The ordinance also provided civil and criminal
penalties for companies who use anyone not franchised by the city for the collection and
disposal of grease. Although STW was a state regulated business, the city and its
ordinance prohibited STW from performing its services with Weslaco businesses. STW
challenged the city's authority to pass the ordinance in violation of state law that provides
that a person receiving solid waste disposal services from another entity, may continue to
do so by showing written documentation that the person is receiving services from another
entity. See Tex. Health & Safety Code ANN. § 364.034(e) (Vernon 2004).

2. Standard of Review


 We review a summary judgment de novo. Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005). Summary judgment under rule 166a(c) is proper when a
movant establishes that there is no genuine issue of material fact and that the movant is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Randall's Food Mkts., Inc.
v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). A defendant is entitled to summary
judgment if the evidence disproves as a matter of law at least one element of each of the
plaintiff's causes of action or if the evidence conclusively establishes all elements of an
affirmative defense. See Randall's, 891 S.W.2d at 644. Where the trial court grants the
judgment without specifying the grounds, we affirm the summary judgment if any of the
grounds presented are meritorious. FM Props. Operating Co. v. City of Austin, 22 S.W.3d
868, 872-73 (Tex. 2000).

 A party may move for summary judgment under rule 166a(i) on the ground that
there is no evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial. (2) Tex. R. Civ. P. 166a(i); Western
Investments, Inc. v. Urena, 162 S.W.3d 547, 557 (Tex. 2005); Duvall v. Texas Dep't of
Human Servs., 82 S.W.3d 474, 477 (Tex. App.-Austin 2002, no pet.). Unless the
nonmovant produces summary judgment evidence raising a genuine issue of material fact
on the challenged elements, the court must grant the motion. Tex. R. Civ. P. 166a(i) & cmt.
1997; Urena, 162 S.W.3d at 548; Duvall, 82 S.W.3d at 477-78.

 In reviewing a no-evidence claim, we view the evidence in a light that tends to
support the finding of the disputed fact and disregard all evidence and inferences to the
contrary. Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002); Duvall,
82 S.W.3d at 478. If more than a scintilla of evidence exists, it is legally sufficient. 
Goodman, 80 S.W.3d at 577. Evidence is more than a scintilla when it rises to the level
that would enable reasonable and fair-minded people to differ in their conclusions. Duvall,
82 S.W.3d at 478. But when evidence offered to prove a vital fact is so weak as to do no
more than create a mere surmise or suspicion of its existence, it is no more than a scintilla
and, in legal effect, is no evidence. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600
(Tex. 2004); Duvall, 82 S.W.3d at 478. 

 Because the trial court's order does not specify the grounds for granting summary
judgment, we must affirm the summary judgment if any of the theories presented to the trial
court and preserved for appellate review are meritorious. Provident Life & Accident Ins.
Co. v. Knott, 128 S.W.3d 211, 217 (Tex. 2004). A no-evidence summary judgment is
improperly granted if the non-movant presents more than a scintilla of probative evidence
to raise a genuine issue of material fact. Lampasas v. Spring Center, Inc., 988 S.W.2d
428, 432 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed material fact issue that
precludes summary judgment. Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548-49
(Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and
any doubt resolved in its favor. Id. at 549.

 In construing a statute, we presume that the Legislature intended the entire statute
to be effective. See Tex. Gov't Code § 311.021(2) (Vernon 2007). The law is settled that
every word in a statute is presumed to have been used for a purpose; and a cardinal rule
of statutory construction is that each sentence, clause, and word, is to be given effect if
reasonable and possible. Texas Workers' Compensation Ins. Fund v. Del Indus., Inc., 35
S.W.3d 591, 593 (Tex. 2000) (citing Perkins v. State, 367 S.W.2d 140, 146 (Tex. 1963)). 
In addition, we do not view disputed portions of a statute in isolation. Id. (citing
Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 133 (Tex. 1994)).

3. Authority of City 


 According to STW, Weslaco had no statutory authority to prohibit a person who is
receiving solid waste disposal service from another entity from continuing to use that entity
if it provides the city with written documentation to that effect. STW cites Texas Health and
Safety Code section 364.034(e) which provides: 

 (e) This section does not apply to a person who provides the public or private
entity, public agency, or county with written documentation that the person
is receiving solid waste disposal services from another entity. Nothing in this
section shall limit the authority of a municipality to enforce its grant of a
franchise for solid waste collection and transportation services within its
territory. 


Tex. Health and Safety Code § 364.034(e) (Vernon 2004). After the effective date of the
Weslaco ordinance, written documentation was submitted by five restaurant owners who
invoked this provision, and notified the city that they were receiving waste collection
services from STW and intended to continue that service. Weslaco denied that right and
told the customers they were required to use the new designated vendor.

 STW argues that the plain language of the statute allows customers to select their
own waste collection provider by complying with the statute. It explains that the Texas
Constitution forbids cities from passing any ordinance that conflicts with a state statute. 
Tex. Const. art. XI § 5. Before 2001, the Weslaco ordinance may have been proper
because no statute prevented it. However, in 2001 the legislature added section (e) which
then read: 

 (e) This section does not apply to a person who provides the public or
private entity, public agency, or county with written documentation that the
person is receiving solid waste disposal services from another entity.


Tex. Health & Safety Code § 364.034(e) (Vernon 2002). The following legislative
session, the next sentence providing for enforcement was added, which we quoted above. 
And as STW points out, the statute was again amended after the trial court granted
summary judgment in December 2006. Effective September 1, 2007, section (e) now
reads:

 (e) Except as provided by Subsections (f), (g), and (h), this section
does not apply to a person who provides the public or private entity, public
agency, or county with written documentation that the person is receiving
solid waste disposal services from another entity. Nothing in this section
shall limit the authority of a public agency, including a county or a
municipality, to enforce its grant of a franchise or contract for solid waste
collection and transportation services within its territory. Except as provided
by Subsection (f), the governing body of a municipality may provide that a
franchise it grants or a contract it enters into for solid waste collection and
transportation services under this subchapter or under other law supersedes
inside of the municipality's boundaries any other franchise granted or
contract entered into under this subchapter.

 

 (f) Notwithstanding the other provisions of this section, a political subdivision,
including a county or a municipality, may not restrict the right of an entity to
contract with a licensed waste hauler for the collection and removal of
domestic septage or of grease trap waste, grit trap waste, lint trap waste, or
sand trap waste.


Id. § 364.034(e) (Vernon 2007). STW contends that before 2001, courts held that
municipalities could impose a franchise for garbage collection, citing Grothues v. City of
Helotes, 928 S.W.2d 725, 728 (Tex. App.-San Antonio 1996, writ ref'd n.r.e.) However,
the 2001 change quoted above, while still allowing a city franchise, specifically permitted
an opt-out of the franchise or contract when written documentation was presented showing
that a person is receiving service from another entity.

 STW argues that the word "franchise" does not mean "exclusive franchise." In
Ennis Waterworks, the Texas Supreme Court held that the grant of a franchise will not be
considered to be exclusive unless "given by express terms or clear implication." Ennis
Waterworks v. Ennis, 144 S. W. 930, 934 (Tex. 1912) (an exclusive grant will not be
implied unless given by express terms or by clear implication). More recently in City of
Edinburg, the supreme court held that the franchise agreement did not give the Grantee
the exclusive right to sell gas within the city. Southern Union Co. v. City of Edinburg, 129
S.W.3d 74, 84 (Tex. 2003). "Indeed, under Texas law, the grant could not have been an
exclusive one." Id. 

 STW then distinguishes between the definition of "franchise" versus "exclusive
franchise." While we agree with STW both that the city sought to grant an exclusive
franchise and that there is patently a difference between an exclusive franchise and a non-exclusive franchise, the more important inquiry is the meaning of the 2003 amendment to
section (e), providing that nothing should prevent a city from enforcing its franchise.

 STW argues that we must give the statute its full meaning. It argues statutes are
not to be read in isolation but should be read within the context of the entire scheme citing, 

Del Industries., Inc., 35 S.W.3d at 593-94. Each sentence, clause and word is to be given
effect if reasonable and possible. Id. STW uses this approach to conclude that language
allowing a city to enforce its non-exclusive franchises is entirely consistent with allowing
persons to chose their own other entity for solid waste services. We find some merit in this
approach. (3)

 Appellee Weslaco counters that the critical issue is whether or not section (e)
overrides prior case law and Attorney General opinions. We agree. Weslaco further
argues that the use of the word "franchise" does not necessarily exclude the city from
awarding an "exclusive franchise." The police powers of a municipality give them the
option of awarding a franchise or an exclusive franchise. The power to issue an exclusive
franchise is merely a sub-set of a cities power to issue franchises. The second sentence
of section (e) "overrides this opt out provision completely." This is not true for 
governmental agencies, other than cities, according to this appellee. Weslaco goes on to
argue that section (e) is "non-ambiguous and perfectly harmonized as plainly read." 
Therefore, it concludes, a resort to legislative history is not required, citing Alex Sheshunoff
Management Services., L.P. v. Johnson, 209 S.W.3d 644, 651-52 (Tex. 2006). The
Johnson case states:

 Ordinarily, the truest manifestation of what legislators intended is what
lawmakers enacted, the literal text they voted on. This enacted language is
what constitutes the law, and when a statute's words are unambiguous and
yield a single inescapable interpretation, the judge's inquiry is at an end. See
McIntyre v. Ramirez, 109 S.W.3d 741, 745, 46 Tex. Sup. Ct. J. 854 (Tex.
2003). Wherever possible, we construe statutes as written, but where
enacted language is nebulous, we may cautiously consult legislative history
to help divine legislative intent. See Helena Chem. Co. v. Wilkins, 47 S.W.3d
486, 493, 44 Tex. Sup. Ct. J. 675 (Tex. 2001).


Id. Mindful of this admonition, we observe that the prior legislative history, while perhaps
somewhat more favorable to appellant, is not dispositive. 

 Weslaco concludes that nothing in section 364.034 limits the authority of a
municipality "to grant a franchise, any type of franchise." However, this argument overlooks
the first sentence of section (e) allowing an opt-out. Even more to the point, the disputed
second sentence of section (e) addresses "the authority of a municipality to enforce its grant
of a franchise" (emphasis added). See Tex. Health & Safety Code § 364.034(e). The actual
granting of a franchise is not discussed in the second sentence relied upon by appellees.

 Appellee LES argues that case law has long upheld a municipality's right to regulate
and franchise garbage collection. They too cite Grothues, 928 S.W.2d at 729. "The
legislature and the courts have long recognized the importance of garbage disposal to the
enhancement of health and safety. The enforcement of a comprehensive garbage collection
plan such as the City has adopted is clearly within the police power granted to all
municipalities." Id. (citing Tex. Local Gov't Code Ann. § 54.001 (Vernon 1994)). While all
parties rely on this case, it is important to recognize its actual holding: 

 We think context and the permissive language utilized in § 364.034 (b) clarifies
that the public agency or county has no obligation to continue to provide
garbage service to the resident whose service account is in arrears.
Suspension of service is available as an encouragement to pay the delinquent
bill so that delivery of the service may be restored.


Id. Furthermore, Grothues patently addresses neither the legislature limitations added by
section (e) in 2001, nor its further modifications in 2003 and 2007. We also note that the
holding deals once again with enforcement, rather than the grant of a franchise.

 Appellees also cite Browning-Ferris, Inc. v. Leon Valley, 590 S.W.2d 729, 732 (Tex.
Civ. App.-San Antonio 1979, writ ref'd n.r.e.) (allowing exclusive contracts for the disposal
of sewage over a fixed period of years, as well as ordinances having the same purposes,
sustained as a lawful exercise of the police power). Generally, to the same effect is an
Attorney General Opinion cited by one appellee: See Tex. Atty Gen. Op. No. DM-401 (1996)
(city may grant an exclusive franchise and contract to a private company to collect, haul, and
dispose of all solid waste material within the city) (citing Browning-Ferris, Inc., 590 S.W.2d
at 732). Although these authorities address the grant of a franchise, the legislative limitations
in question are not discussed.

 LES observes "When read together, sentence two seemingly confers back to
municipalities' [sic] rights which sentence one seemingly takes away." LES suggests that the
first sentence opt-out of section (e) does not apply to municipalities. However, the opt-out
sentence applies to "public agencies." Tex. Health & Safety Code § 364.034(e). And public
agency is defined elsewhere in the act to specifically include municipalities. Id. § 364.003(3)
(Vernon 2004).

 LES also argues that the second sentence of section (e) was passed as part of HB
2036 to expand a city's authority to enter into a contract with another political unit. Under the
bill, such a contract may provide authority to the other political subdivision to refuse to provide
services to a customer who is delinquent. Then, as part of HB 2036, the second sentence
was added to section 354.034(e). Thus, LES again urges that the opt-out provision of the first
sentence applies only to non-municipal agencies. We reject this argument because the plain
reading of the statute provides otherwise. Del Indus., Inc., 35 S.W.3d at 593 (a cardinal rule
of statutory construction is that each sentence, clause and word is to be given effect if
reasonable and possible).

 Both Weslaco and LES discuss the lack of competitive bidding. We do not believe
those arguments are significantly material to the questions at hand. In any event, we agree
with appellees that a competitive bid for the franchise in question was not required. See Tex.
Gov't Code §§ 252.021, 252.022(a)(2) (Vernon 2005).

 All parties seemingly agree that Weslaco had both statutory and inherent police power
to grant a franchise for garbage or grease collection. However, as STW aptly notes, home
rule municipalities are expressly prohibited from doing anything that would interfere with a
statute passed by the legislature. Tex. Const. art. XI, § 5 (no charter or any ordinance
passed under said charter shall contain any provision inconsistent with the Constitution of the
State, or of the general laws enacted by the Legislature of the State.)

 4. Section (e)

 The first sentence of section (e), unequivocally allows a person to opt-out of solid
waste collection by a public agency with written documentation that the person is receiving
solid waste disposal service from another entity. Tex. Health & Safety Code § 364.034(e). 
However, the sentence goes further. It states: "This section does not apply" to such a person
already receiving the service. In other words, none of the other portions of section 364.034
apply to the opt-out provision. "Ordinarily, the truest manifestation of what legislators
intended is what lawmakers enacted, the literal text they voted on." Johnson, 209 S.W.3d
644, 651-52. "This enacted language is what constitutes the law, and when a statute's words
are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an
end." Id. Yet, all concerned want to read into the second sentence of sub-section (e), either
ambiguity or a self-serving result.

 In construing a statute, we presume that the legislature intended the entire statute to
be effective. See Tex. Gov't Code § 311.021(2). We do not view disputed portions of a
statute in isolation. Bridgestone/Firestone, Inc., 878 S.W.2d at 133. The second sentence
therefore must be read in such a way that the entire subsection is effective, which, perforce,
includes the opt-out. As LES points out, the second sentence of section (e) was passed as
part of HB 2036 to expand a city's authority to enter into a contract with another political unit
and to enforce its collections by refusing to provide services to a delinquent customer. Thus,
a city was given additional power to provide services, and additional power to collect or
enforce its franchises. 

 We reiterate in this context: "Nothing in this section shall limit the authority of a
municipality to enforce its grant of a franchise for solid waste collection and transportation
services within its territory." Tex. Health & Safety Code § 364.034 (e). The two sentences
then should be read together to permit an opt-out from the franchise and to allow for
enforcement of franchises. This is consistent with LES's argument that the new provision
was added to expand the city's authority to enter into a contract with another political unit and
also be able to enforce those new alliances. This action was not previously allowed under
at least one Attorney-General Opinion. See Tex. Atty Gen. Op. No. JC-0219 (2000) (public
agency is not authorized to suspend service to delinquent person for services provided by
another agency or county). Thus, the enforcement language of sentence two was added to
address this lack of such authority.

 As we noted above, the second sentence of section (e) does not address the granting
of a franchise. The first sentence implicitly addresses the grant of a franchise or rather an
exception to the grant of a franchise. It provides the entire section, including the granting of
franchises, does not apply to the opt-out.

 Our view is bolstered by both the state constitution and subsequent legislation. Our
constitution disallows monopolies. See Tex. Const. art. I, § 26. "Perpetuities and
monopolies are contrary to the genius of a free government, and shall never be allowed, nor
shall the law of primogeniture or entailments ever be in force in this State." Id.; see also City
of Edinburg, 129 S.W.3d at 84. The application of this principle harkens back at least to
Edwards County v. Jennings, 35 S.W. 1053, 1054 (Tex. 1896). "[W]e are of opinion that the
agreement of the county to grant to Jennings 'an exclusive right of way to lay piping for
supplying the town of Rocksprings, Edwards County, Texas, with water tends to create a
monopoly, is violative of the Constitution, illegal and void." Id. However, we are also mindful
of the line of cases that seemingly allow some leeway from this constitutional prohibition
under the police powers of a city. See Grothues, 928 S.W.2d at 731 ("Where public interest
is involved, individuals' rights often yield to overriding public interests and are often regulated
under the police power of the state."); City of Brackenridge v. Cozart, 478 S.W.2d 162, 65
(Tex. App.-Eastland 1972, writ ref'd n.r.e.); see also San Antonio v. San Antonio Irr. Co., 118
Tex. 154, 164-65 (Tex. 1929) (two things were provided for: (a) means of remedying bad
conditions arising out of the present arrangement or as incident to growth of the City's
population, etc.; and (b) avoidance of the monopolistic conditions denounced by constitution,
if applicable to sewage contract).

 We presume that a duly-enacted ordinance is constitutional. City of Brookside Village
v. Comeau, 633 S.W.2d 790, 792 (Tex. 1982). It is also presumed that a statute is
constitutional, that the entire statute is intended to be effective, that a just and reasonable
result is intended, that a result is feasible of execution, and that public interest is favored over
any private interest. See Tex. Gov't Code Ann. § 311.021 (Vernon 1988) (Code Construction
Act). At the same time, a statue that deprives a person of a common-law right "will not be
extended beyond its plain meaning or applied to cases not clearly within its purview." 
Satterfield v. Satterfield, 448 S.W.2d 456, 459 (Tex. 1969).

 Thus, the tension between the constitutional prohibition against monopolies and the
police powers of a city to regulate garbage collection are alleviated by our interpretation of
section (e). We read the two sentences together to allow an opt-out and still allow
enforcement of a duly authorized franchise, which by the very statutory limitation of its
legislative grant, may not disallow an opt-out.

 Finally, STW calls our attention to important amendments to section (e). We may look
to later amendments for guidance in statutory interpretation. See Cash Am. Int'l, Inc. v.
Bennett, 35 S.W.3d 12, 17 (Tex. 2000) (recent legislative actions also strongly suggest that
the Commissioner's jurisdiction to consider this dispute was not intended to be exclusive). 
Conversely, legislative inaction following judicial interpretation has been found by the Texas
Supreme Court to evidence legislative adoption of such interpretation. Robinson v. Central
Texas MHMR Ctr., 780 S.W.2d 169, 171 (Tex. 1989) (citing Allen Sales and Servicenter, Inc.
v. Ryan, 525 S.W.2d 863, 866 (Tex. 1975)). The trial court granted summary judgment
disallowing the statutory opt-out in December, 2006. When the legislature met the next
month, section (e) was again amended to reiterate and better clarify that a political
subdivision may not restrict the right of an entity to contract with a licensed grease and grit
trap waste hauler.

 The 2007 legislature repeated most of the language of section (e), but added an
indisputable section (f): 

 (f) Notwithstanding the other provisions of this section, a political subdivision,
including a county or a municipality, may not restrict the right of an entity to
contract with a licensed waste hauler for the collection and removal of domestic
septage or of grease trap waste, grit trap waste, lint trap waste, or sand trap
waste.

Tex. Health & Safety Code § 364.034(f) (Vernon 2007). The amended sub-section
maintains the first sentence of section (e) providing for an opt-out but also excepts new
subsections (f), (g) and (h). Id. §§ (e), (f), (g), (h). The second sentence also remains and
still allows not only a city to enforce its franchises, but also a public agency and a county to
enforce its grant of a franchise or contract. Id. § (e). Finally, the legislature further explicitly
allows non-franchised septic and other waste collection and removal. Id. § (f).

 We conclude that the trial court improperly granted Weslaco's and LES's motions for
summary judgment on this issue and improperly denied STW's partial motion for summary
judgment on this issue.

 5. Vested Property Right

 We next discuss whether Weslaco's abrogation of LES's business constitutes a taking
of its property rights. The trial court also granted both Weslaco and LES's motions for
summary judgment on STW's inverse condemnation claims. Whether a particular factual
situation constitutes a taking is generally a question of law. General Servs. Comm'n v.
Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001). The takings clause prohibits the
State from taking a person's property under its sovereign powers without adequate
compensation unless by such person's consent. Id. (citing Tex. Const. art. 1, § 17). To
establish a takings claim, an entity must prove (1) the State intentionally performed certain
acts, (2) that resulted in a "taking" of property, (3) for public use. Id. To show a taking under
article I, section 17, of the Texas Constitution, STW "must show that a governmental actor
acted intentionally to take or damage property for a public use." State v. Holland, 221 S.W.3d
639, 643 (Tex. 2007) (citing General Servs. Comm'n 39 S.W.3d at 598-99). "Taking,"
"damaging," and "destruction" of one's property are three distinct claims arising under Article
I, Section 17. Steele v. City of Houston, 603 S.W.2d 786, 789-91 (Tex. 1980). The term
"taking" has become used as a shorthand to refer to all three types of claims. City of Dallas
v. Jennings, 142 S.W.3d 310, 313 (Tex. 2004). Here, although we similarly use the phrase
"takings claim," we are specifically addressing the claim of damage or appropriation of STW's
business and property rights. See id. 

 Weslaco and LES both maintain that STW has no vested right to collect solid waste
within a city. They cite Alford v. Denton, 546 S.W.2d 672, 674 (Tex. Civ. App.-Fort Worth
1977, writ ref'd n.r.e.). Alford stands for the proposition that governmental action which
causes or results in an individual's loss of business, standing alone, does not constitute a
constitutional "taking" of property which gives rise to any right to receive compensation from
the sovereign. Id. This holding is based upon the notion that "a person operating a business
in, under or over the streets, alleys and other public places within an incorporated municipality
without a franchise has no property right in the continued use of such premises for conducting
his business." Id. 

 Alford is distinguishable because the city merely went into competition with Alford. Id. 
"We think it is clear from the record that the city council is fully authorized, not only by the
general laws referred to above, but by this article of the city charter, to issue the bonds for the
purpose of constructing a plant of its own, although it may result in competition with a plant
which is already performing such services for the inhabitants of said city. . . ." Id. The City
of Denton did not prohibit Alford from continuing his business as is the case with STW. Nor
was that city's action contrary to legislative dictates.

 It is also interesting to note that Alford reiterated the principle that under the state
Constitution, art. 1, § 26, a city cannot grant a private corporation an exclusive franchise to
furnish water, light, and power or gas to the inhabitants of such city for a given number of
years. Id. at 674. "Even though a franchise has been granted, the city can nevertheless
grant a similar franchise for the operation of a similar public utility to another corporation or
can construct its own plant and operate it in competition with the company to which such a
franchise has been granted." Id. 

 Appellees also cite San Antonio v. Bee-Jay Enterprises, Inc., 626 S.W.2d 802, 804-05
(Tex. App.- San Antonio 1981, no writ). Bee-Jay holds that there was no vested property
right in the use of the streets and alleys of that portion of the City of San Antonio known as
Gateway Terrace Subdivision. Id. There being no vested property right to use the streets for
its commercial venture, Bee-Jay failed to show irreparable injury to property and was thus
not entitled to injunctive relief. Id. Bee-Jay did not even allege any vested property rights in
the use of the streets, but rather an impairment of its contractual obligation. Id. San Antonio
had filed suit to enjoin Bee-Jay from operating a private unfranchised residential garbage
service within the city limits, which was denied. Id. In July, 1981, San Antonio enacted an
ordinance which required a franchise in order to conduct business on public streets except
for certain private, residential garbage collection service. Id. Bee-Jay in turn relied upon 
West Texas Utilities Co. v. City of Baird, 286 S.W.2d 185, 186-87 (Tex.Civ.App.-Eastland
1956, writ ref'd n.r.e.), holding that the electric utility had no right, without a franchise, to use
the streets and alleys of any incorporated city or town in the operation of its business. Id. 
Appellees also cite Baird. Electric utilities may construct, maintain and operate lines over,
across and along streets and alleys within incorporated cities and towns only with the consent
and under the direction of the governing body of the municipality. Id. (citing Tex. Rev. Civ.
Stat. art. 1436a, 1955). "Its franchise having expired, the utility company no longer had a
right to use the streets and alleys, as such right, or the determination of such right, rested with
the legislative body of that city." Id. 

 Baird, however, has limited value because it was construing the powers of cities with
populations under 5000, as well as the then existing public utility statues, specifically requiring
consent and direction within incorporated cities. (4) Id. It is also noteworthy that Baird in turn
cites Ennis Waterworks 144 S. W. at 934, holding that a water company had a natural and
inherent right not subject to license (and not required to be granted by the city) to sell water
to the citizens of Ennis. We observe that Baird does not support appellees' position and is
tenuous support for the cited authority of Bee Jay. See Bee-Jay Enterprises, Inc., 626
S.W.2d at 805. 

 Here, STW alleges an unlawful taking and actual physical appropriation of property
and/or interference with the right to use and enjoy its property and property rights. Although
STW had no franchise or consent, none was required before Weslaco's ordinance. And at
the time of the ordinance, STW had express legislative right to continue its business as we
discussed above.

 Both appellees argue that contractual obligations are not impaired under the "takings
clause" by a statute in effect when that contract was made. They cite Brownsville v. Public
Utility Commission., 616 S.W.2d 402, 410 (Tex. Civ. App.-Texarkana 1981, writ ref'd n.r.e.),
holding that obligations of a contract are not impaired, within the meaning of the constitutional
provisions, by a statute in effect when the contract was made. This argument begs the
question of whether property rights were impaired by a cities' taking in violation of a state
statute. STW itself had a statutory right both when its contracts were made and thereafter
when the ordinance was passed.

 Weslaco points out that STW has no property right by virtue of its state permit. The
Texas Administrative Code provides: (b) a permit issued within the scope of this subchapter
does not convey any property rights of any sort, nor any exclusive privilege, and does not
become a vested right in the permittee; and (c) the issuance of a permit does not authorize
any injury to persons or property or an invasion of other property rights, or any infringement
of state or local law or regulations. 30 Tex. Admin. Code § 305.122(b),(c) (Vernon 1996), We
do not disagree. Rather, STW property rights arise from its business ownership rights, its
commercial contracts, and explicit statutory authority. See Tex. Health & Safety Code §
364.034(e).

 LES also cites Linick v. Employers Mutual Casualty Co., 822 S.W.2d 297, 300 (Tex.
App.- San Antonio 1991, no writ). Linick states that where the public interest is involved,
individuals' rights often yield to overriding public interests and are often regulated under the
police power of the State. Id. Contractual relations between parties can be regulated and
freedom of contract restricted to a degree that is necessary for the reasonable protection of
the public. Id. LES argues that just because there is a state statute on a particular subject,
that does not automatically preempt that subject from city regulation, citing Gordon v. State,
757 S.W.2d 496, 502 (Tex. App.-Houston [1st Dist.] 1988, pet ref'd). "Local regulation,
ancillary to and in harmony with the state legislation, is acceptable." Id. A statute and an
ordinance will not be held repugnant to each other if a reasonable construction upholding
both can be reached. Id. However, Gordon also holds, "An ordinance that is inconsistent
with state legislation is impermissible." Id. (citing City of Brookside Village v. Comeau, 633
S.W.2d 790, 796 (Tex. 1982)).

 Takings are classified as either physical or regulatory takings. Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 933-35 (Tex. 1998). Physical takings occur when the
government authorizes an unwarranted physical occupation of an individual's property. Id.
(citing Yee v. City of Escondido, 503 U.S. 519, 522 (1992)). "A compensable regulatory
taking can also occur when governmental agencies impose restrictions that either (1) deny
landowners of all economically viable use of their property, or (2) unreasonably interfere with
landowners' rights to use and enjoy their property." Id. (citing Lucas v. South Carolina
Coastal Council, 505 U.S. 1003, 1015-19 & n.8, (1992); Taub v. City of Deer Park, 882
S.W.2d 824, 826 (Tex. 1994); City of Austin v. Teague, 570 S.W.2d 389, 393 (Tex. 1978)).

 Property is taken if it is transferred from one owner to another. Steele v. Houston,
603 S.W.2d 786, 789 (Tex. 1980). Decisions by the Texas Supreme Court have broadly
applied the underlying rationale to takings by refusing to differentiate between an exercise of
police power, which excused compensation, and eminent domain, which required
compensation. Id. In Steele, the court noted an earlier opinion that municipal action by
impressing a scenic easement upon one's property entitled the landowner to damages under
article I, section 17, holding that the city had "singled out plaintiffs to bear all the costs for the
community benefit without distributing any cost among the members of the community." Id.
(citing Teague, 570 S.W.2d at 393). 

 A compensable regulatory taking of property occurs when a governmental agency
imposes restrictions that: (1) do not substantially advance legitimate state interests; or (2)
either (a) deny property owners all economically viable use of their property, or (b)
unreasonably interfere with property owners' rights to use and enjoy their property. Mayhew,
964 S.W.2d at 935. A restriction denies the property owner all economically viable use of the
property or totally destroys its value if the restriction renders the property valueless. Id. 
Determining whether all economically viable use of a property has been denied entails an
analysis of whether value remains in the property after the governmental action. Id. A more
difficult determination is whether the government has unreasonably interfered with a
landowner's right to use and enjoy property; it requires a consideration of the economic
impact of the regulation and the extent to which the regulation interferes with distinct
"investment-backed expectations." Id. at 935 n5. 

 A regulation may go so far in imposing public burdens on private interests as to require
compensation. Hallco Tex., Inc. v. McMullen County, 221 S.W.3d 50, 56 (Tex. 2006). In
deciding whether regulatory action goes "too far," we are to carefully weigh "all the relevant
circumstances," including: (1) "'the economic impact of the regulation on the claimant"; (2)
"the extent to which the regulation has interfered with distinct investment-backed
expectations"; and (3) "the character of the governmental action.'" (5) Id. (citing Sheffield Dev.
Co. v. City of Glenn Heights, 140 S.W.3d 660, 670-72 (Tex. 2004) (quoting Connolly v.
Pension Benefits Guar. Corp., 475 U.S. 211, 225, (1986) (quoting Penn Cent. Transp. Co.
v. City of New York, 438 U.S. 104, 124 (1978))). The extent of the governmental intrusion
may be a question for the trier of fact, but whether the facts constitute a taking is a question
of law. Id. 

 In determining the economic impact of the regulation, we compare the value that has
been taken from the property to the value that remains in the property. Mayhew, 964 S.W.2d
at 935-36. We are not to consider the loss of anticipated gains or potential future profits. Id.
at 936. In considering the investment-backed expectations, the existing and permitted uses
of the property are the "primary expectation" of the property owner that is affected by the
regulation. Id. 

 In Sheffield, the Texas Supreme Court discusses some of the ramifications of the
United State Supreme Court's holding in Penn Central. Sheffield Dev. Co., 140 S.W.3d at
672-73. The United States Supreme Court has cautioned that the Penn Central factors do
not comprise a formulaic test. Id. "Penn Central does not supply mathematically precise
variables, but instead provides important guideposts that lead to the ultimate determination
whether just compensation is required." Id. Furthermore, the three Penn Central factors are
not the only ones relevant in determining whether the burden of regulation ought "in all
fairness and justice" to be borne by the public. Id. Whether a regulatory taking has occurred,
the United States Supreme Court has said, "depends on a complex of factors including" the
three set out in Penn Central. Id. The analysis "necessarily requires a weighing of private
and public interests" and a "careful examination and weighing of all the relevant
circumstances in this context." Id. In considering regulatory takings issues, "we consider all
of the surrounding circumstances" in applying "a fact-sensitive test of reasonableness." Id. 

 Applying a fact sensitive test is problematic in this summary judgment context. Our
review is necessarily limited to the pleadings and few facts presented by the parties. We are
further inhibited by the implicit holding of the trial court that STW was foreclosed from
claiming any property right was lost by regulatory taking because the Weslaco ordinance
effecting STW was a valid exercise of police power. (6) And, as appellees argue, a city is not
required to make compensation for losses occasioned by the proper and reasonable exercise
of its police power, citing College Station v. Turtle Rock Corp., 680 S.W.2d 802, 804 (Tex.
1984). However, an inverse condemnation may occur when the government physically
appropriates, or unreasonably interferes with a property owners right to use and enjoy the
property, such as by restricting access or denying a permit for development. See Westgate,
Ltd. v. State, 843 S.W.2d 448 (Tex. 1992) (citing Teague, 570 S.W.2d at 393; City of Waco
v. Texland Corporation, 446 S.W.2d 1 (Tex. 1969); DuPuy v. City of Waco, 396 S.W.2d 103
(Tex. 1965)); see also City of Dallas v. Blanton, 200 S.W.3d 266, 274 (Tex. App.-Dallas
2006, no pet.) (regulatory taking may also occur when the governmental restriction
unreasonably interferes with the property owner's right to use and enjoy the property).

 The United States Supreme Court has admitted, "cases attempting to decide when a
regulation becomes a taking are among the most litigated and perplexing in current law." 
Sheffield, 140 S.W.3d at 671. The Texas Supreme Court has called these legal battlefields
"a 'sophistic Miltonian Serbonian Bog.'" Id. (citing Teague, 570 S.W.2d at 391, 21 (quoting
Brazos River Auth. v. City of Graham, 354 S.W.2d 99, 105 (Tex. 1962); see also JOHN
MILTON, PARADISE LOST 49, bk. II, ll. 592-94 (Scott Elledge ed., Norton & Co.
1993)(1674)).

 Notwithstanding, small beacons of clarity have been identified. "[A]t least two discrete
categories of regulatory action as compensable without case-specific inquiry." Sheffield, 140
S.W.3d at 671. One is where regulation "compels the property owner to suffer a physical
'invasion' of his property." Id. "The direct, physical effect on property, though short of
government possession, makes the regulation categorically a taking." Id. Another is "where
regulation denies all economically beneficial or productive use of land." Id. To deprive an
owner of all economically beneficial use of land virtually deprives him of the land itself. Id. 
But this is "limited to 'the extraordinary circumstance when no productive or economically
beneficial use of land is permitted'" and "the landowner is left with a token interest." Id. 

 "Physical possession is, categorically, a taking for which compensation is
constitutionally mandated . . . ." Id. at 669-70 (citing Tahoe-Sierra Pres. Council Inc. v.
Tahoe Reg'l Planning Agency, 535 U.S. 302, 322, (2002)). Lesser interferences, however,
may also result in a taking. Id. These types of regulatory actions require an "essentially ad
hoc, factual inquir[y] . . . ." Id. at 672 In Wichita Falls the intermediate court stated: 

 The establishment of public highways being primarily a function of
government belonging to the state, the right to establish them resides
primarily in the Legislature, and, in the absence of constitutional restrictions,
the Legislature may exercise that right direct or delegate it to a political
subdivision of the state, or to such other agency or instrumentality, general
or local in its scope, as it may determine. The exercise of this right by a
political subdivision of the state, or by local officers, is founded upon
statutory authority therefor[e]. The Legislature may exercise possession of
public roads and control over them, by and through such agencies as it may
designate." 

Wichita Falls v. Real Estate Trust, 135 S.W.2d 736, 738 (Tex. Civ. App.-Fort Worth 1939,
writ dis'm.). In this case, Weslaco sought to grant an exclusive right to haul grease and grit
within its territorial limits. Absent legislative limitations, Weslaco had such a right. City of
Breckenridge v. McMullen, 258 S.W. 1099, 1102 (Tex. Civ. App.-Fort Worth 1923, no writ). 
In 2001, this ability was limited by the legislature by the addition of section (e) of the Health
and Safety Code. Tex. Heal & Safety Code § 364.034(e). As we noted above, the 2003
amendment to section (e) did not destroy the opt-out provision made law in 2001. Id. 
Weslaco is without authority to pass any ordinance that conflicts with a state statute. Tex.
Const. art. XI, § 5. 

 STW pled that the passage and enforcement of Weslaco's ordinance was an unlawful
taking. STW alleged an unlawful taking by actual physical appropriation of property and/or
interference with the right to use and enjoy its property. Further, it had property rights in its
contracts with existing customers, which property was taken without just compensation. See
United States Trust Co. v. New Jersey, 431 U.S. 1, 19 n.16 (1977) (contract rights are a form
of property and as such may be taken for a public purpose provided that just compensation
is paid); see also Lynch v. United States, 292 U.S. 571, 579 (U.S. 1934) (valid contracts are
property, whether the obligor be a private individual, a municipality, a State or the United
States). These rights are also alleged to include rights to solicit new business and to maintain
and service existing customers.

 We find that STW pled and presented some evidence of a potentially valid claim for
inverse condemnation. See Duvall, 82 S.W.3d at 478. Two bases for this conclusion
predominate. First, a regulatory action is compensable without case-specific inquiry when a
regulation deprives a property owner of all economically beneficial or productive use of the
property; such action "makes the regulation categorically a taking." Sheffield, 140 S.W.3d
at 671. Second, in deciding whether regulatory action goes "too far," we carefully weigh "all
the relevant circumstances," including: (1) "'the economic impact of the regulation on the
claimant"; (2) "the extent to which the regulation has interfered with distinct
investment-backed expectations"; and (3) "the character of the governmental action.'" Hallco
Tex., Inc., 221 S.W.3d at 56. According to the pleadings and limited proof of the summary
proceeding, the economic impact on STW was to shut down a going concern in Weslaco,
interfere with STW's business operations in Weslaco, and render its legitimate contracts void. 
See id.; see also Nixon, 690 S.W.2d at 548-49 (every reasonable inference must be indulged
in favor of the non-movant and any doubt resolved in its favor). 

 In considering the investment-backed expectations, the existing and permitted uses
of the property are the "primary expectation" of the property owner that is affected by the
regulation. Mayhew, 964 S.W.2d at 935-36. STW had an existing on-going business in
Weslaco, and was permitted to exercise its property rights under state law. Thus, the city 
defeated the primary expectation of STW. See Goodman, 80 S.W.3d at 577; Nixon, 690
S.W.2d at 548-49. 

 The character of the governmental action was to shut down STW's Weslaco business
in violation of both a state statute and the Texas Constitution. Sheffield, 140 S.W.3d at 672;
Tex. Const. art. § 17;see Tex. Const. art. XI, § 5. Appellees argue that Weslaco's action 
was a legitimate exercise of police power. We have already found otherwise. Furthermore,
even a finding of a significant and legitimate public purpose is not, by itself, enough to justify
the impairment of contractual obligations. Keystone Bituminous Coal Ass'n v. DeBenedictis,
480 U.S. 470, 505 (U.S. 1987). "A court must also satisfy itself that the legislature's
"adjustment of 'the rights and responsibilities of contracting parties [is based] upon
reasonable conditions and [is] of a character appropriate to the public purpose justifying [the
legislation's] adoption.'" Id. The legislature made the dominant grant and adjustment of
respective rights and responsibilities. The city then, in spite of statutory constraints,
abrogated the property rights of STW. See Alamo Carriage Service, Inc. v. San Antonio, 768
S.W.2d 937, 940 (Tex. App.-San Antonio 1989, no writ) (property interests are created and
defined by state law); see also United States Trust Co., 431 U.S. at 19 n.16. 

 We conclude that Weslaco's regulatory action goes "too far" in depriving STW of its
property rights to carry on its state regulated business specifically authorized by statute. See
Hallco Tex., Inc., 221 S.W.3d at 56. Weslaco unreasonably interfered with STW's right to
use and enjoy its property. Id. A regulation may go so far in imposing public burdens on
private interests as to require compensation. Sheffield, 140 S.W.3d at 672. Finally, Weslaco
appropriated the business and property of STW for its own public use. Tex. Const. art. I, §
17; see Dallas County Flood Control Dist. v. Benson, 306 S.W.2d 350, 351 (Tex.1957). In
effect, the city reassigned STW's business and contracts to LES, who in turn rewarded
Weslaco by returning ten percent of its proceeds to the city's coffers.

 We sustain STW's second issue, and find that the trial court improvidently granted the
motions for summary judgment by Weslaco and LES. 

6. Injunction


 We are not informed of Weslaco's action following the 2005 legislative amendments,
more explicitly allowing STW's right to do its business within the city. We would presume that
the ordinance was amended to conform with state law. Only if it failed or refused to comply
with state mandates, would the potential for any injunction remain. In such a case, courts of
equity may, in a proper case, enjoin the enforcement of a criminal statute or ordinance when
it is unconstitutional or otherwise void and when its enforcement invades a vested property
right which will result in irreparable injury. See Bee-Jay Enterprises, Inc., 626 S.W.2d at 804;
State v. Logue, 376 S.W.2d 567, 569 (Tex. 1964); Crouch v. Craik, 369 S.W.2d 311 (Tex.
1963).

 7. Conclusion

 The trial court improperly granted the motions of summary judgment filed by Weslaco
and LES on all three claims. We reverse and remand on these issues. It improperly denied
STW's motion for partial summary judgment on the first issue. We reverse and render on
that issue. Accordingly, we remand for further proceedings consistent with this opinion. DON WITTIG

 Justice


Memorandum Opinion delivered and

filed this 23rd day of April, 2009.


1. Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice
of the Supreme Court of Texas pursuant to the government code. Tex. Gov't Code Ann. § 74.003 (Vernon
2005).
2. Although one appellee alludes to its no-evidence motion for summary judgment, the motions filed
do not comport with that rule. See Tex. R. Civ. P. 166a(i) .
3. We do not agree with appellant that a city may not award an exclusive franchise under some
circumstances, as we discuss below.
4. Within incorporated cities and towns such corporations may construct, maintain and operate lines
over, across and along streets and alleys with the consent and under the direction of the governing body of
the municipality. Tex. Rev. Civ. Stat. Ann. art. 1436a.
5. These three principles are referred to as the Penn Central factors.
6. If Weslaco's abrogation of STW's property interests had not been precluded by statute, we would
agree there was no taking.